**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DAVID JENKINS,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cv-00364-RWS** |
| | § | |
| **EXPERIAN INFORMATION** | § | |
| **SOLUTIONS, INC.; EQUIFAX** | § | |
| **INFORMATION SERVICES, LLC;** | § | |
| **TRANS UNION, LLC; NELNET, INC.** | § | |
| | § | |
| **Defendant.** | § | |

**NELNET SERVICING, LLC'S ORIGINAL ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Nelnet Servicing, LLC (incorrectly named as Nelnet, Inc.), by and through the undersigned counsel, Sabrina A. Neff and Brandon S. Stein of Husch Blackwell LLP, and files its Original Answer and Affirmative Defenses to Plaintiff's Complaint, and would respectfully show unto the Court the following:

**PRELIMINARY STATEMENT**

1.      This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act).

**ANSWER: The allegations of Paragraph 1 are Plaintiff's characterization of his claims and no response is required.**

2.      Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

**ANSWER: The allegations of Paragraph 2 are Plaintiff's characterization of his own allegations and no response is required.**

HB: 4918-0772-0373.1

3.      While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

**ANSWER: The allegations of Paragraph 3 are Plaintiff's attempt to make a "blanket" pleading of statutory liability rather than pleading a short and plain statement of the claim showing that he is entitled to relief and demand for the relief sought Nelnet denies that Plaintiff is permitted to circumvent the requirements of FED. R. CIV. P. 8 through such allegations.**

4.      All violations by the Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

**ANSWER: The allegations of Paragraph 4 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and therefore, can neither admit nor deny.**

5.      Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named in this Complaint.

**ANSWER: The allegations of Paragraph 5 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and therefore, can neither admit nor deny.**

### JURISDICTION AND VENUE

6.      Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

**ANSWER: The allegations of Paragraph 6 are Plaintiff's jurisdiction allegations. Nelnet does not contest subject matter jurisdiction. However, Nelnet denies this Court has personal jurisdiction over Nelnet.**

7.      Venue in this District is appropriate under 28 U.S.C. §1391(b).

2

**ANSWER: The allegations of Paragraph 6 are denied. On information and belief, Plaintiff is a resident of Rogersville, Tennessee and none of the events alleged below took place in this district.**

## PARTIES

8.      Plaintiff is a natural person and a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

**ANSWER: The allegations of Paragraph 8 are admitted.**

9.      Defendant Experian Information Solutions, Inc (hereinafter "Experian"), is a For-Profit Corporation with a major processing center in the Eastern District of Texas. Experian is registered to do business in Texas and has a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties.

**ANSWER: The allegations of Paragraph 9 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

10.      Defendant Equifax Information Services, LLC (hereinafter "Equifax"), is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Equifax is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

**ANSWER: The allegations of Paragraph 10 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

11.      Defendant TransUnion, LLC (hereinafter "TransUnion"), is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is

3

engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, TransUnion is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

**ANSWER: The allegations of Paragraph 111 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

12.    Defendant (Nelnet, INC.) (hereinafter "Nelnet"), is a Foreign for-profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the Eastern District of Texas.

**ANSWER: The allegations of Paragraph 12, it is denied that "Nelnet, Inc." is a proper party to this case. Nelnet Servicing, LLC has appeared and makes answer as the proper party servicing the loans at issue in this credit reporting dispute. The remaining allegations of Paragraph 12 are disputed.**

## FACTUAL ALLEGATIONS

13.    Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 13, Nelnet realleges its responses to Paragraph 1-12 as if fully stated herein.**

14.    Plaintiff's name is David Jenkins[.]

**ANSWER: The allegations of Paragraph 14 are admitted.**

15.    Plaintiff is the victim of inaccurate credit reporting.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 15 and, therefore, can neither admit nor deny.**

16.    Plaint [sic] is the victim of identity theft.

4

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and, therefore, can neither admit nor deny.**

17.    On information and belief, the identity theft began after Plaintiff's ex-wife used his personal identifying information (PII) to apply for the student loans without Plaintiff's knowledge, consent, or authorization.

**ANSWER: As to the allegations of Paragraph 17, it is denied that Plaintiff's ex-wife applied for the student loans without his consent. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and, therefore, can neither admit nor deny.**

18.    Plaintiff and his ex-wife have been divorced since approximately January of 2000.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 18 and, therefore, can neither admit nor deny.**

19.    Plaintiff's ex-wife, unbeknownst to Plaintiff, took out student loans using Plaintiff's personal identification information and in Plaintiff's name a substantial amount of time after the divorce was finalized.

**ANSWER: As to the allegations of Paragraph 19, it is denied that Plaintiff's ex-wife applied for the student loans without his consent. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and, therefore, can neither admit nor deny.**

20.    Plaintiff's ex-wife inputted her mother's former address in Florida, as well as her former phone number, when applying for the loans. Nelnet then sent all correspondence regarding the fraudulent loans to Plaintiff's ex-mother-in-law's former residence, preventing Plaintiff from receiving notice of the fraud.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20 and, therefore, can neither admit nor deny.**

21.    Plaintiff has not lived in Florida since before his divorce in January of 2000.

5

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and, therefore, can neither admit nor deny.**

22.     As a result of the identity theft, the following accounts were opened without Plaintiff's knowledge, authorization, or consent, and subsequently began appearing on Plaintiff's Experian, Equifax, and Trans Union credit reports:

a. DEPT OF ED/NELNET Account #90000046109****

b. DEPT OF ED/NELNET Account #90000049541****

**ANSWER: As to the allegations of Paragraph 22, it is denied that the student loans were opened without Plaintiff's consent. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and, therefore, can neither admit nor deny.**

23.     Each of the fraudulent accounts are being reported with high balances, severely damaging Plaintiff's credit score, creditworthiness, and credit reputation.

**ANSWER: The allegations of Paragraph 23 are denied.**

24.     In addition to the fraudulent accounts, an address in Daytona, FL, appeared on Plaintiff's credit reports as well as a phone number that does not belong to Plaintiff:

a. Address: 714 Lola Ave, Deltona, FL 32738

b. Phone number: 423-737-5654

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 24 and, therefore, can neither admit nor deny.**

25.     On information and belief, the Dayton address and phone number are related to Plaintiff's now-deceased ex-mother-in-law.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 25 and, therefore, can neither admit nor deny.**

26.     Plaintiff received a letter from Credit Acceptance dated August 2, 2025, denying him a car loan based on information found in his Experian credit report.

6

HB: 4918-0772-0373.1

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 26 and, therefore, can neither admit nor deny.**

27.    Plaintiff received a letter from Global Lending Services dated September 15, 2025, denying him a car loan based on information found in his Experian credit report.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 27 and, therefore, can neither admit nor deny.**

28.    Plaintiff received a letter from Y-12 Credit Union dated November 18, 2025, denying him a car loan based on information found in his Trans Union credit report.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 28 and, therefore, can neither admit nor deny.**

29.    Plaintiff received a letter from Capital One dated November 18, 2025, denying him a car loan based on information found in his Equifax, Experian and Trans Union credit reports.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 29 and, therefore, can neither admit nor deny.**

30.    Plaintiff received a letter from Synchrony Bank dated February 6, 2026, denying him a car loan based on information found in his Trans Union credit report.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 30 and, therefore, can neither admit nor deny.**

31.    On information and belief, the car loan denials are directly related to the two fraudulent student loan accounts appearing on Plaintiff's credit reports.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 31 and, therefore, can neither admit nor deny.**

32.    On September 1, 2025, Plaintiff's Capital One credit limit was lowered.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 32 and, therefore, can neither admit nor deny.**

33.     Upon information and belief, Capital One's decision to lower Plaintiff's credit limit was based on an inflated debt-to-income ratio caused by fraudulent student loans that do not belong to Plaintiff.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 33 and, therefore, can neither admit nor deny.**

34.     Plaintiff received a letter from Nelnet dated October 8, 2025, stating that he needs to make payment on the loans to avoid them being sent to collections and the potential of wage garnishment.

**ANSWER: The allegations of Paragraph 34 are admitted.**

35.     Plaintiff received another letter dated November 27, 2025, stating his loan is approaching default.

**ANSWER: The allegations of Paragraph 35 are admitted.**

36.     These repeated notices instilled fear and anxiety in Plaintiff that his wages would be garnished for a debt that is not his.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 36 and, therefore, can neither admit nor deny.**

37.     After learning of the identity theft, Plaintiff disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to Experian, Equifax, and Trans Union (hereinafter "the Credit Reporting Agencies" or "the CRAs") via USPS Certified Mail. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's utility bill showing his current address, and a copy of Plaintiff's driver's license for identity verification.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 37 and, therefore, can neither admit nor deny.**

38.     Plaintiff's Experian dispute package was delivered and signed for by an Experian agent or employee on September 29, 2025.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 38 and, therefore, can neither admit nor deny.**

39.     Plaintiff's Trans Union dispute package was delivered and signed for by a Trans Union agent or employee on September 29, 2025.

8

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 39 and, therefore, can neither admit nor deny.**

40.     Plaintiff's Equifax dispute package was delivered and signed for by an Equifax agent or employee on September 30, 2025.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 40 and, therefore, can neither admit nor deny.**

41.     Following his dispute, Plaintiff received dispute results from Trans Union dated October 8, 2025, stating both of the fraudulent accounts had been verified as accurate by Trans Union. Based on information and belief, Trans Union did no independent investigation into Plaintiff's dispute and simply parroted the data in the ACDV response from Nelnet.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 41 and, therefore, can neither admit nor deny.**

42.     On December 31, 2025, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed his Experian credit report and found that both of the fraudulent student loan accounts disputed by Plaintiff were still appearing on his credit report. Based on information and belief, Experian did no independent investigation into Plaintiff's dispute and simply parroted the data in the ACDV response from Nelnet[.]

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 42 and, therefore, can neither admit nor deny.**

43.     On January 6, 2026, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed his Equifax credit report and found that both of the fraudulent student loan accounts disputed by Plaintiff were still appearing on his credit reports. Based on information and belief, Equifax did no independent investigation into Plaintiff's dispute and simply parroted the data in the ACDV response from Nelnet[.]

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 43 and, therefore, can neither admit nor deny.**

44.     The following accounts continued reporting for more than thirty (30) days following the CRAs' receipt of Plaintiff's dispute packages, in violation of the FCRA:

a. TRANS UNION

i DEPT OF ED/NELNET Account #90000046109****

9

ii DEPT OF ED/NELNET Account #90000049541****

b. EQUIFAX

i DEPT OF ED Account #*8829

ii DEPT OF ED Account #*2632

c. EXPERIAN

i DEPT OF ED/NELNET Account #90000046109****

ii DEPT OF ED/NELNET Account #90000049541****

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 44 and, therefore, can neither admit nor deny.**

45.     After learning the CRAs continued to report the fraudulent and inaccurate accounts after receipt and processing of Plaintiff's first dispute packages, Plaintiff obtained a police report and FTC identity theft report and re-disputed the accounts through dispute packages mailed directly to the CRAs via USPS Certified Mail.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 45 and, therefore, can neither admit nor deny.**

46.     Plaintiff's second dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC identity theft report, a copy of Plaintiff's utility bill showing his current address, a copy of Plaintiff's social security card and a copy of Plaintiff's driver's license for identity verification.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 46 and, therefore, can neither admit nor deny.**

47.     Plaintiff's second Equifax dispute package was delivered and signed for by an Equifax agent or employee on February 1, 2026.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 47 and, therefore, can neither admit nor deny.**

48.     On February 9, 2026, Plaintiff received a letter from Equifax stating that fraudulent account ending in *8829 was previously removed but the company who furnished the account requested to have the account reinserted.

10

HB: 4918-0772-0373.1

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 48 and, therefore, can neither admit nor deny.**

49.    On information and belief, four (4) days following its receipt of Plaintiff's dispute package, the fraudulent student loan account ending in *2632 was still reporting on Plaintiff's Equifax report.

50.    On March 20, 2026, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed his Equifax credit report and found that both of the fraudulent accounts were still being reported by Equifax.

    a. EQUIFAX

        i DEPT OF ED Account #*2632

        ii DEPT OF ED Account #*8829

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 50 and, therefore, can neither admit nor deny.**

51.    On information and belief, Equifax is still reporting the fraudulent and inaccurate student loan accounts on Plaintiff's credit report, to the great detriment of Plaintiff's credit.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 51 and, therefore, can neither admit nor deny.**

52.    As a result of Defendants' conduct, Plaintiff suffered extensive damages, described in detail below.

**ANSWER: Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 52 and, therefore, can neither admit nor deny.**

## PLAINTIFF'S DAMAGES

53.    As a result of Defendants' violations of the FCRA, Plaintiff is entitled to actual, statutory, and punitive damages, along with their attorneys' fees and costs in this matter. Defendants' conduct was such that Defendants acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff.

HB: 4918-0772-0373.1

**ANSWER: The allegations of Paragraph 53 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

54.     The conduct of the Defendants was a direct and/or proximate cause, as well as a substantial factor in bringing about injuries, damages, and harm suffered by Plaintiff. Plaintiff continues to suffer because of Defendants' conduct. Plaintiff expects their damages to continue to accrue and be ongoing until they are made whole again if that ever occurs.

**ANSWER: The allegations of Paragraph 55 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

55.     Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as such other relief permitted by law. Plaintiff suffered the following types of damages due to the conduct of Defendants:

a. Emotional damages in the form of mental anguish, humiliation, and embarrassment. Plaintiff has experienced significant emotional distress as a direct result of Defendants' inaccurate credit reporting. The ongoing stress and anxiety caused by Defendants' conduct have severely impacted Plaintiff's daily life and decision-making. This harm has been especially devastating because Plaintiff is currently undergoing treatment for cancer, a period during which stability and reduced stress are critical to his physical and mental well-being. The added burden of Defendants' misconduct has exacerbated Plaintiff's mental health struggles, contributing to heightened anxiety, increased feelings of depression, and a pervasive sense of hopelessness. Plaintiff has been forced to seek professional help to cope with these symptoms. Since the inaccurate reporting began, Plaintiff has lived in a constant state of worry, significantly diminishing his overall quality of life during an already vulnerable and challenging time.

b. Physical manifestations of mental anguish, humiliation, and embarrassment. Plaintiff's emotional distress has manifested in significant and persistent physical symptoms. Plaintiff suffers from chronic sleep disruption, daily headaches that rise to the level of migraines, and ongoing difficulty concentrating. Plaintiff's stress and anxiety specifically have led to sweating,

shaking, elevated blood pressure, and weight loss. The severity of this emotional strain has also led to episodes of shortness of breath and heart palpitations when Plaintiff worries about his credit and the long-term consequences of the inaccurate reporting.

12

HB: 4918-0772-0373.1

c. Damages to Plaintiff's creditworthiness, credit reputation, and borrowing power. Plaintiff's credit has been severely damaged by Defendants' conduct, resulting in repeated loan denials and a lowered credit limit. Plaintiff was unable to obtain a car loan, leaving him with no choice but to walk to work. This has significantly disrupted Plaintiff's daily life, limited his independence,

and has imposed strain on his physical and emotional wellbeing. The financial instability caused by Defendants has created an overwhelming burden, especially during a time when Plaintiff is undergoing treatment for cancer. The inability to access reliable transportation has made it difficult for Plaintiff to manage basic responsibilities. This has severely impacted Plaintiff's ability to freely live his life and has created an overwhelming financial burden for Plaintiff.

**ANSWER: The allegations of Paragraph 55 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

56.     Plaintiff's damages caused by and through the conduct of Defendants are more generally described as follows:

a. Emotional damages in the form of mental anguish, humiliation, embarrassment, depression, and anxiety.

b. Physical manifestations of stress and anxiety, including weight loss, heart palpitations and high blood pressure.

c. Financial damages, including damage to Plaintiff's creditworthiness, credit reputation, and borrowing power.

d. All other damages as described above.

**ANSWER: The allegations of Paragraph 56 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and therefore, can neither admit nor deny.**

57.     Plaintiff's damages attributable to Defendants are serious, continuing, and ongoing.

**ANSWER: The allegations of Paragraph 57 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

13

58.    Defendants' actions have led to Plaintiff's great detriment and loss and are caused by the conduct of Defendants described herein.

**ANSWER: The allegations of Paragraph 58 are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

## CAUSES OF ACTION

59.    Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 59, Nelnet realleges its responses to Paragraph 1-58 as if fully stated herein.**

60.    This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages which Plaintiff has suffered.

**ANSWER: The allegations of Paragraph 60 are Plaintiff's characterization of his claims and no response is required. To the extent a response is required, the allegations are denied as to Nelnet. Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and therefore, can neither admit nor deny.**

## VIOLATIONS OF THE FAIR CREDIT REPORTNG ACT (FCRA)

61.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 61, Nelnet realleges its responses to Paragraph 1-60 as if fully stated herein.**

62.    The FCRA defines a "Consumer Reporting Agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any

14

HB: 4918-0772-0373.1

means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

**ANSWER: The allegations of Paragraph 62 are not directed at Nelnet and no response is required.**

63.     Defendants (Experian, Equifax, and Trans Union) are Consumer Reporting Agencies pursuant to the FCRA and will collectively be referred to as "the CRAs," or "the CRA Defendants."

**ANSWER: The allegations of Paragraph 63 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

64.     The FCRA defines a "Person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

**ANSWER: The allegations of Paragraph 64 are not directed at Nelnet and no response is required.**

65.     The Code of Federal Regulations defines a "Furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 CFR § 1022.41(c). ["","furnisher","",""]

**ANSWER: The allegations of Paragraph 65 are not directed at Nelnet and no response is required.**

66.     Defendant (Nelnet) is a "Person" pursuant to the FCRA, and "Furnisher" pursuant to the Code of Federal Regulations (CFR) and will be referred to as "the Data Furnisher" or "the Data Furnisher Defendant."

**ANSWER: As to the allegations of Paragraph 66, it is admitted that Nelnet is at times deemed a "furnisher" within the meaning of the FCRA. The remaining allegations of Paragraph 66 are denied.**

67.     The following conduct of the CRAs and the Data Furnisher was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the

15

serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects their damages caused by the CRAs and the Data Furnisher to continue to accrue and be ongoing until Plaintiff is made whole again.

**ANSWER: The allegations of Paragraph 67 are denied as to Nelnet, Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

68.     The CRAs and the Data Furnisher, as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in their actions related to Plaintiff. As a result of these Defendants' violations of the FCRA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

**ANSWER: The allegations of Paragraph 68 are denied as to Nelnet, Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

69.     Plaintiff's damages attributable to the CRAs and the Data Furnisher are described in detail in paragraphs 55-60 above.

**ANSWER: The allegations of Paragraph 69 are denied as to Nelnet, Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

70.     Plaintiff's damages attributable to the CRAs and the Data Furnisher are serious, continuing, and ongoing.

**ANSWER: The allegations of Paragraph 70 are denied as to Nelnet, Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

71.     This suit is brought against the Defendants for violations of the FCRA which are the causes of Plaintiff's damages. In all instances of violating the FCRA, Defendants did so willfully, intentionally, recklessly, and/or negligently. Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees under 15 U.S.C. §1681n and §1681o.

HB: 4918-0772-0373.1

**ANSWER: The allegations of Paragraph 71 are denied as to Nelnet, Nelnet lacks knowledge sufficient to form a belief as to the truth of the remaining allegations and, therefore, can neither admit nor deny.**

## COUNT I:
## 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Defendants Experian, Equifax, and Trans Union)

72.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 72, Nelnet realleges its responses to Paragraph 1-71 as if fully stated herein.**

73.     The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**ANSWER: The allegations of Paragraph 73 are not directed at Nelnet and no response is required.**

74.     The CRAs maintained fraudulent and inaccurate information about Plaintiff and prepared credit reports regarding Plaintiff containing fraudulent information.

**ANSWER: The allegations of Paragraph 74 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

75.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the CRAs readily stored, prepared, reported, and/or sold reports containing fraudulent and inaccurate information about Plaintiff, and in doing so, the CRAs suggested that Plaintiff was responsible for accounts and information that was the product of identity theft.

**ANSWER: The allegations of Paragraph 75 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge**

17

**sufficient to form a belief as to the truth of the allegations and therefore, can neither**

**admit nor deny.**

76.    The CRAs' conduct as to Plaintiff was such that a third party who viewed Plaintiff's credit reports could reasonably infer that the fraudulent and inaccurate information being reported by the CRAs was accurate, to Plaintiff's great detriment.

**ANSWER: The allegations of Paragraph 76 are not directed at Nelnet and no**

**response is required. To the extent a response is required, Nelnet lacks knowledge**

**sufficient to form a belief as to the truth of the allegations and therefore, can neither**

**admit nor deny.**

77.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit files and/or reports they maintained and published about Plaintiff.

**ANSWER: The allegations of Paragraph 77 are not directed at Nelnet and no**

**response is required. To the extent a response is required, Nelnet lacks knowledge**

**sufficient to form a belief as to the truth of the allegations and therefore, can neither**

**admit nor deny.**

78.    Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have known that the information being reported about Plaintiff was fraudulent and inaccurate.

**ANSWER: The allegations of Paragraph 78 are not directed at Nelnet and no**

**response is required. To the extent a response is required, Nelnet lacks knowledge**

**sufficient to form a belief as to the truth of the allegations and therefore, can neither**

**admit nor deny.**

79.    Plaintiff disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to the CRAs via USPS certified mail. In these dispute packages, Plaintiff expressly informed the CRAs that Plaintiff was the victim of identity theft and that the disputed account information did not belong to Plaintiff. Plaintiff instructed the CRAs not to rely on the Data Furnisher for accurate information about their credit and to conduct an independent investigation into Plaintiff's dispute.

HB: 4918-0772-0373.1

**ANSWER: The allegations of Paragraph 79 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

80.    Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have deleted and/or blocked the reporting of the fraudulent and inaccurate information after being put on notice of the identity theft from Plaintiff's dispute package.

**ANSWER: The allegations of Paragraph 80 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

**COUNT II:**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to Conduct a Reasonable Investigation into Plaintiff's Dispute**
**(Defendants Experian, Equifax, and Trans Union)**

81.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 81, Nelnet realleges its responses to Paragraph 1-80 as if fully stated herein.**

82.    The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…. before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

**ANSWER: The allegations of Paragraph 82 are not directed at Nelnet and no response is required.**

83.     Plaintiff disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's first dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's utility bill and a copy of Plaintiff's driver's license for identification verification.

**ANSWER: The allegations of Paragraph 83 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

84.     Plaintiff's second dispute package to Equifax contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report a copy of Plaintiff's social security card, and a copy of Plaintiff's utility bill.

**ANSWER: The allegations of Paragraph 84 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

85.     Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

**ANSWER: The allegations of Paragraph 85 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

86.     After Plaintiff verified that their dispute packages had been delivered to the CRAs by USPS, Plaintiff waited more than thirty (30) days before viewing their credit reports following their dispute.

HB: 4918-0772-0373.1

**ANSWER: The allegations of Paragraph 86 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

87.     After pulling new credit reports, Plaintiff found that the disputed accounts remained on their credit report following the CRAs' processing of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**ANSWER: The allegations of Paragraph 87 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

88.     Plaintiff provided the CRAs with ample information proving that the disputed accounts were the product of identity theft. Had the CRAs conducted reasonable investigations in accordance with the requirements imposed by the FCRA, they would have deleted the items from Plaintiff's credit files before the end of the thirty (30) day period.

**ANSWER: The allegations of Paragraph 88 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

**COUNT III:**
**15 U.S.C. § 1681i(a)(4)**
**Failure to Read and Consider Documents Attached to Plaintiff's Dispute**
**(Defendants Experian, Equifax, and Trans Union)**

89.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 89, Nelnet realleges its responses to Paragraph 1-88 as if fully stated herein.**

90.     The FCRA provides that "[i]n conducting any reinvestigation under [15 U.S.C. § 1681i(a)(1)], with respect to disputed information in the file of any consumer, the consumer

21

HB: 4918-0772-0373.1

reporting agency shall review and consider all relevant information submitted by the consumer in the [30-day] period described in [15 U.S.C. § 1681i(a)(1)(A)] with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

**ANSWER: The allegations of Paragraph 91 are not directed at Nelnet and no response is required.**

91.    Plaintiff disputed the fraudulent and inaccurate accounts through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's first dispute packages contained a detailed and thorough dispute letter signed by Plaintiff, a utility bill and a copy of Plaintiffs driver's license for identity verification. Plaintiff's second dispute package to Equifax contained a detailed and thorough dispute letter signed by Plaintiff, a utility bill, a copy of Plaintiff's social security card, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

**ANSWER: The allegations of Paragraph 91 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

92.    Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

**ANSWER: The allegations of Paragraph 92 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

93.    Plaintiff, through their dispute packages, provided the CRAs with documents sufficient to prove that Plaintiff was the victim of identity theft, however, the CRAs failed to review and consider all relevant documents submitted by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(4).

**ANSWER: The allegations of Paragraph 93 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge**

**sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

94.    Had the CRAs acted in accordance with the investigation requirements imposed by the FCRA and reviewed and considered each document contained in Plaintiff's dispute package, it would have been easy for the CRAs to determine that Plaintiff was the victim of identity theft and delete and/or suppress the disputed information accordingly.

**ANSWER: The allegations of Paragraph 94 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

**COUNT IV:**
**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to Delete and/or Modify the Disputed Information**
**(Defendants Experian, Equifax, and Trans Union)**

95.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 95, Nelnet realleges its responses to Paragraph 1-94 as if fully stated herein.**

96.    The FCRA provides that:

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

15 U.S.C. §1681i(a)(5)(A).

23

HB: 4918-0772-0373.1

**ANSWER: The allegations of Paragraph 96 are not directed at Nelnet and no response is required.**

97.     Plaintiff disputed the fraudulent and inaccurate accounts through a dispute package mailed directly to the CRAs via USPS certified mail. Plaintiff's first dispute packages contained a detailed and thorough dispute letter signed by Plaintiff, a utility bill, and a copy of Plaintiff's driver's license for identification verification. Plaintiff's second dispute package to Equifax contained a detailed and through dispute letter signed by Plaintiff, a utility bill, a copy of Plaintiff's social security card, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

**ANSWER: The allegations of Paragraph 97 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

98.     Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit report as a result of identity theft, yet the CRAs failed to delete fraudulent and inaccurate information disputed by Plaintiff.

**ANSWER: The allegations of Paragraph 98 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

99.     After pulling new credit reports following their dispute, Plaintiff found that the CRAs continued reporting the fraudulent and inaccurate accounts disputed by Plaintiff, in violation of the FCRA.

**ANSWER: The allegations of Paragraph 99 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

24

100.    The CRAs violated their duty under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed information from Plaintiff's credit file and/or credit report.

**ANSWER: The allegations of Paragraph 100 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

101.    Had the CRAs conducted reasonable investigations into Plaintiff's disputes as required by statute, they would have easily found that Plaintiff was the victim of identity theft and promptly deleted the disputed items from Plaintiff's credit files and/or credit reports in accordance with the FCRA. Instead, the CRAs continued their inaccurate credit reporting about Plaintiff, to Plaintiff's great detriment.

**ANSWER: The allegations of Paragraph 101 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

## COUNT V:
### 15 U.S.C. § 1681c-2(a)
**Failure to Block the Reporting of Identity Theft Information within Four (4) Business Days
(Defendant Equifax)**

102.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 102, Nelnet realleges its responses to Paragraph 1-101 as if fully stated herein.**

103.    The FCRA provides the following:

[A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identities as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—

(1) appropriate proof of identity of the consumer;

(2) a copy of an identity theft report;

25

(3) the identification of such information by the consumer; and

(4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

**ANSWER: The allegations of Paragraph 103 are not directed at Nelnet and no response is required.**

104.    After Plaintiff discovered the fraudulent and inaccurate accounts appearing on their credit reports, Plaintiff disputed the accounts through dispute packages mailed directly to the CRAs via USPS certified mail.

**ANSWER: The allegations of Paragraph 104 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

105.    Plaintiff's second dispute package to Equifax contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, a copy of Plaintiff's social security card, a copy of Plaintiff's utility bill showing his current address, and a copy of Plaintiff's driver's license for identity verification.

**ANSWER: The allegations of Paragraph 105 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

106.    Plaintiff's dispute packages each contained more than enough information for the Equifax to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and inaccurate accounts had been placed on Plaintiff's credit reports as a result of identity theft.

**ANSWER: The allegations of Paragraph 106 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge**

26

**sufficient to form a belief as to the truth of the allegations and therefore, can neither**

**admit nor deny.**

107.   Following the Equifax's receipt of Plaintiff's dispute packages, Plaintiff did not receive any dispute results.

**ANSWER: The allegations of Paragraph 107 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

108.   On information and belief, the Equifax continued reporting the fraudulent and inaccurate accounts on Plaintiff's credit reports in violation of the FCRA.

**ANSWER: The allegations of Paragraph 108 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

109.   Equifax violated 15 U.S.C. § 1681c-2(a) when, based on information and belief, they failed to block the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft within four (4) business days of receipt of proof of identity, a copy of Plaintiff's identity theft report, identification of identity theft-related information, and Plaintiff's statement that the fraudulent and inaccurate accounts were the product of identity theft.

**ANSWER: The allegations of Paragraph 109 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

110.   Had Equifax acted in accordance with their duties under the FCRA, the Equifax would have blocked the reporting of the fraudulent and inaccurate accounts identified by Plaintiff as resulting from identity theft within four (4) business days of receipt of Plaintiff's dispute packages.

27

**ANSWER: The allegations of Paragraph 110 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

## COUNT VI:
### 15 U.S.C. § 1681i(a)(5)(B)
### Reinsertion of Deleted Information
### (Defendant Equifax)

111.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 111, Nelnet realleges its responses to Paragraph 1-110 as if fully stated herein.**

112.    The FCRA provides that "[i]f any information is deleted from a consumer's file pursuant to [15 U.S.C. §1681i(a)(5)(A)], the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate." 15 U.S.C. § 1681i(a)(5)(B)(i).

**ANSWER: The allegations of Paragraph 112 are not directed at Nelnet and no response is required.**

113.    After pulling new credit reports following Equifax's processing of their disputes, Plaintiff found that Defendant Equifax initially deleted and/or suppressed its reporting of the fraudulent and inaccurate accounts disputed by Plaintiff.

**ANSWER: The allegations of Paragraph 113 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

114.    However, after receiving a letter from Defendant Equifax, Plaintiff learned the disputed account had once again begun reporting by Equifax on Plaintiff's Equifax credit report.

**ANSWER: The allegations of Paragraph 114 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge**

28

sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.

115. Equifax violated 15 U.S.C. §1681i(a)(5)(B)(i) when it reinserted the previously deleted Nelnet account on Plaintiff's credit file and/or credit report.

**ANSWER: The allegations of Paragraph 115 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

116. Had Equifax acted in accordance with the requirements of the FCRA, it would have known from its own investigation based on the information provided by Plaintiff that the account was the product of identity theft, and it would not have reinserted and resumed its reporting of the fraudulent and inaccurate accounts on Plaintiff's credit file and/or credit report.

**ANSWER: The allegations of Paragraph 116 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

## COUNT VII:
### 15 U.S.C. § 1681i(a)(5)(C)
### Failure to Follow Reasonable Procedures to Prevent Reappearance of Deleted Information
### (Defendant Equifax)

117. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

**ANSWER: As to the allegations of Paragraph 117, Nelnet realleges its responses to Paragraph 1-116 as if fully stated herein.**

118. The FCRA provides that "[a] consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted…." 15 U.S.C. § 1681i(a)(5)(C).

**ANSWER: The allegations of Paragraph 118 are not directed at Nelnet and no response is required.**

29

119.    Following the Equifax's processing of their dispute, Plaintiff received notice that Defendant Equifax initially deleted and/or suppressed the reporting of the fraudulent and inaccurate accounts disputed by Plaintiff but later reinserted it.

**ANSWER: The allegations of Paragraph 119 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

120.    The CRA violated 15 U.S.C. § 1681i(a)(5)(C) by failing to maintain reasonable procedures designed to prevent the reappearance of the fraudulent and inaccurate accounts that were initially deleted and/or suppressed from Plaintiff's credit file and/or credit report by the CRA following Plaintiff's dispute.

**ANSWER: The allegations of Paragraph 120 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

121.    Had Equifax acted in accordance with its duties under the FCRA, the CRA would not have reinserted the fraudulent and inaccurate accounts on Plaintiff's credit file and/or credit report.

**ANSWER: The allegations of Paragraph 121 are not directed at Nelnet and no response is required. To the extent a response is required, Nelnet lacks knowledge sufficient to form a belief as to the truth of the allegations and therefore, can neither admit nor deny.**

**COUNT VIII:**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct a Reasonable Investigation of the Information Disputed by Plaintiff**
**(Defendant Nelnet)**

122.    Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

30

HB: 4918-0772-0373.1

**ANSWER: As to the allegations of Paragraph 122, Nelnet realleges its responses to Paragraph 1-121 as if fully stated herein.**

123.    The FCRA provides the following:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

(A) Conduct an investigation with respect to the disputed information;

(B) Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) Report the results of the investigation to the consumer reporting agency;

(D) If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) Modify that item of information;

(ii) Deleted that item of information; or

(iii) Permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b).

**ANSWER: The allegations of Paragraph 123 are Plaintiff's recitation of the FCRA and no response is required.**

124.    The Data Furnisher furnished information about fraudulent and inaccurate accounts that were the product of identity theft to the Credit Reporting Agencies.

**ANSWER: The allegations of Paragraph 124 are denied.**

125.    The Data Furnishers caused fraudulent and inaccurate accounts to be added to Plaintiff's credit files with the Credit Reporting Agencies.

31

**ANSWER: The allegations of Paragraph 125 are denied.**

126.    On information and belief, notices of Plaintiff's disputes and attachments were transmitted to the Data Furnishers by the CRAs during the dispute processes. Therefore, the Data Furnisher was aware that the disputed accounts did not belong to Plaintiff and still verified the disputed accounts as accurate and instructed the CRAs to continue reporting the inaccurate information, to the great detriment of Plaintiff.

**ANSWER: As to the allegations of Paragraph 125, it is admitted that notices of Plaintiff's disputes to the CRAs and some documentation regarding his dispute were forwarded to Nelnet. The remaining allegations of Paragraph 125 are denied.**

127.    The Data Furnishers failed to conduct reasonable, good faith investigations into Plaintiff's notices of dispute.

**ANSWER: The allegations of Paragraph 127 are denied.**

128.    Had the Data Furnishers acted in accordance with their duties under 15 U.S.C. § 1681s-2(b), the Data Furnishers would have recognized that the disputed accounts were the product of identity theft and instructed the CRAs to cease their reporting of the fraudulent and inaccurate accounts. Instead, the Data Furnishers verified the disputed accounts as accurate and instructed the CRAs to continue their reporting of the fraudulent and inaccurate accounts.

**ANSWER: The allegations of Paragraph 128 are denied.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a trial by jury and a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a. Actual and compensatory damages pursuant to 15 U.S.C. § 1681;

b. Statutory damages pursuant to 15 U.S.C. § 1681;

c. Punitive damages pursuant to 15 U.S.C. § 1681;

d. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o,

e. Such other and further relief as may be necessary, just and proper.

**ANSWER: The allegations of the foregoing Paragraph are Plaintiff's prayer for relief and no response is required. To the extent a response is required, Nelnet denies that Plaintiff is entitled to the requested relief from Nelnet.**

32

HB: 4918-0772-0373.1

**AFFIRMATIVE DEFENSES**

Each of the following affirmative defenses is pleaded in the alternative:

1.    Plaintiff's Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

2.    Plaintiff's Complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6).

3.    Nelnet pleads all applicable statutes of limitations and laches.

4.    Nelnet pleads that the damages asserted herein, if any, were caused by the actions of third parties over which Nelnet has no control.

5.    The assessment of statutory damages would violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

6.    The assessment of punitive damages would violate the United States Constitution.

7.    Nelnet pleads that, to the extent that it is found liable for any damages, it is entitled to an offset in the amount of any damages that Plaintiff has recovered from any other defendant in this action related to the same conduct by the defendants or same injury by the Plaintiff.

8.    Nelnet reserves the right to add additional affirmative defenses as they become known through discovery or investigation.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Nelnet Servicing, LLC respectfully requests that the Court enter a judgment such that Plaintiff take nothing on his claims, and for any other relief to which Nelnet may show itself justly entitled.

33

HB: 4918-0772-0373.1

DATE: June 15, 2026

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Sabrina A. Neff*
Sabrina A. Neff
State Bar No. 24065813
Sabrina.Neff@HuschBlackwell.com
600 Travis St., Suite 2350
Houston, Texas 77002
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile

Brandon S. Stein
Brandon.Stein@HuschBlackwell.com
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016
(480) 824-7890 – Telephone
(480) 824-7905 – Facsimile

**ATTORNEYS FOR DEFENDANT
NELNET SERVICING, LLC**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing NELNET SERVICING, LLC'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES has been served upon all counsel of record via ECF on Monday, June 15, 2026.

*/s/ Sabrina A. Neff*
Sabrina A. Neff

34

HB: 4918-0772-0373.1